NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 10-3466
_____

UNITED STATES OF AMERICA

v.

DIEGO HERNANDEZ,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-08-cr-00629-006)
District Judge:  Honorable Garrett E. Brown, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
December 12, 2011

Before: SLOVITER, VANASKIE, *Circuit Judges*
and STENGEL,[*] *District Judge*

(Filed: January 06, 2012)
_____

OPINION
_____

---

[*] Hon. Lawrence F. Stengel, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1

SLOVITER, *Circuit Judge*.

Diego Hernandez was convicted in federal court for participating in an extensive telemarketing fraud conspiracy. The jury found Hernandez guilty of wire fraud, aggravated identity theft, conspiracy to commit mail and wire fraud, and conspiracy to commit bank fraud. On appeal, Hernandez claims that he is entitled to a new trial because the prosecutor misrepresented certain evidence during his summation. We will affirm.[1]

**I.**

Hernandez was involved in a elaborate banking scheme, headed by Robert Sacks, in which Hernandez and several other co-conspirators used confidential bank account information to defraud account holders out of millions of dollars over a four-year period. While employed as Sacks' driver, Hernandez aided in the scheme by opening two bank accounts to receive fraudulently acquired funds, attempting to recruit other people to open similar accounts, and helping to establish limited liability corporations to further the scam. As a result, Hernandez was charged with and convicted of: (1) conspiracy to commit mail and wire fraud, contrary to 18 U.S.C. §§ 1341 and 1343 and in violation of 18 U.S.C. § 1349; (2) conspiracy to commit bank fraud, contrary to 18 U.S.C. § 1344 and in violation of 18 U.S.C. § 1349; (3) three counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; and (4) three counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

---

[1] The District Court exercised jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

At trial, Hernandez did not dispute that he participated in a scheme that defrauded thousands of account holders out of their money but contended that, at the time, he did not know that the scheme was fraudulent. The Government therefore presented substantial circumstantial evidence demonstrating that Hernandez knew the scheme involved fraud. First, the Government presented evidence that shortly after Hernandez's arrest, he stated "I knew you guys would be coming for me sooner or later" and that he was "sorry for getting involved in the scheme." Appellee's Supp. App. at 51. Additionally, testimony established that Hernandez was present with two of the scheme's organizers, Sacks and Jan Ludvik, when Ludvik explained the details of the scheme to Sacks' wife. Likewise, testimony demonstrated that Hernandez was present and "partaking lightly" in another discussion among co-conspirators regarding "the details of . . . the scam" and "how to tighten it up as much as possible to get the most money." App. at 80a. Finally, the Government presented evidence showing that Hernandez understood that the scheme was fraudulent based on his conversations with co-conspirators Ludvik, Ronald Sherman, and Peter Affatati.[2]

In the prosecutor's summation, he went over some of the key evidence supporting Hernandez's knowledge that the scheme was fraudulent. Considering these statements to

---

[2] Specifically, Ludvic testified that he developed a "social relationship" with Hernandez over the course of the scheme, during which Ludvic "express[ed] some of [his] frustrations . . . [with] the scam" to Hernandez and warned him that his "wife could get into big trouble" if she opened an account to support the scheme. App. at 89a-91a. Sherman testified, among other things, that Hernandez indicated that he was opening a telemarketing account "[b]ecause he wanted to make quick money." App. at 76aa2. Affatati testified that Hernandez told him that he was "opening up accounts for Robert [Sacks]" and that Sacks had offered him $10,000 a month to do so. App. at 107a.

be misrepresentations of the evidence, Hernandez's counsel objected at sidebar. The Court assured Hernandez's counsel that "[t]he jury's recollection will control." App. at 136. After the summation, Hernandez's counsel repeated the same objection and the Court instructed the jurors that "if during the course of the trial in opening statements, closing statements, or at any time any of the attorneys here have put forth a version of the facts that does not square with your own recollection, you're to disregard counsel's version in favor of your own recollections." App. at 145. Hernandez's counsel did not request any further action from the Court regarding the alleged misstatements.[3]

---

[3] Hernandez's counsel did, however, tell the Court at sidebar his concerns about the prosecutor, Mr. Katz's purported mischaracterizations of the evidence:

> MR. HANEY: I'm concerned that this is an incident specific because frankly, it's the only evidence against my client. It's come down to basically about three conversations and if two-thirds of them are wrong in accordance to the representation by the government in their closing, I believe that the jury is going to have a misunderstanding of what the evidence was and then they may, in fact, rely upon Mr. Katz's misrepresentation or misleading representation of the evidence.
>
> THE COURT: Mr. Katz?
>
> MR. KATZ: Your Honor, with regard to the conversation in the car [with Sacks' wife], it was clear that fraud was being discussed. Now, whether the word fraud was used or not, quite honestly I don't even remember the words that I used in my summation. The record will set that clear. But the notion is – the testimony, to my recollection, was quite vivid that Diego Hernandez was within feet of Robert Sacks and –
>
> THE COURT: When they were discussing fraud, whether the word was used or not –
>
> MR. KATZ: Whether the word fraud was used or not is really, I think, of no moment.
>
> THE COURT: Jurors' recollection will control.

After the jury found Hernandez guilty on all counts, Hernandez filed a motion for an acquittal and a motion for a new trial.[4] The District Court denied these motions and sentenced Hernandez to sixty-one months imprisonment and $52,877 in restitution. Hernandez timely appealed.

## II.

Because Hernandez did not request a mistrial based on the prosecutor's alleged misstatements before the District Court, we review the Court's failure to order a mistrial for plain error.[5] *See United States v. Riley*, 621 F.3d 312, 338-39 (3d Cir. 2010). "In order to be plain error, an error must not only be 'obvious,' it must also 'have affected the outcome of the District Court proceeding.'" *United States v. Bethancourt*, 65 F.3d 1074, 1079-80 (3d Cir. 1995) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). "[W]e may reverse only if we find an error in the prosecutor's comments so serious as to 'undermine the fundamental fairness of the trial and contribute to a miscarriage of justice.'" *United States v. Pungitore*, 910 F.2d 1084, 1126 (3d Cir. 1990).

---

App. at 141a-143a.

[4] Hernandez argued that the evidence was insufficient to support his conviction.

[5] Hernandez argues that the prosecutor's alleged misstatements are subject to harmless error review. We disagree. Hernandez's counsel objected to the prosecutor's remarks at sidebar on two occasions but never requested a mistrial. Counsel instead requested that the Court "give [the] jury the opportunity to rely on its own recollection," and the Court instructed the jury accordingly. App. at 136a.

Here, the prosecutor's summation did not constitute plain error. Rather, the prosecutor was merely drawing the reasonable inference that Hernandez understood the scheme's fraudulent nature.

Hernandez challenges the prosecutor's comment that "Diego knows from before the conversations he had with Mr. Ludvik, Mr. Affatati, [and] Mr. Salomon . . . that this is a fraudulent endeavor," App. at 140a, since Scott Salomon never mentioned Hernandez in his testimony.[6] Additionally, Raymond Jackson, an employee at Bank of America's corporate security department, testified that the bank's records indicated that the account was closed because of "fraud." App. at 67a. As a result, the prosecutor, in his summation, stated to the jury, "[y]ou heard from Ray Jackson . . . that the personal account, the business account was shut down for fraud, and that that information was relayed back to Vivian Hernandez."[7] App. at 138a. As Hernandez highlights, however, Jackson "did not testify that Vivian or [Diego Hernandez] were notified that the closing of the . . . accounts was for 'fraud.'"[8] Appellant's Br. at 33.

Assuming *arguendo* that these misstatements constitute obvious error, the challenged remarks did not "undermine the fundamental fairness of the trial and

---

[6] The Government concedes that the prosecutor mistakenly mentioned Scott Salomon in discussing conversations involving Hernandez. *See* Appellee's Br. at 13.

[7] The prosecutor also stated, "[y]ou heard from Ray Jackson, this account was closed because of fraud and the people, Vivian Hernandez, Diego Hernandez, were notified of that fraud." App. at 140a.

[8] Appellant did not object to the prosecutor's comments regarding Raymond Jackson at trial. Thus, we also review those comments for plain error. *See Pungitore*, 910 F.2d at 1125-26.

contribute to a miscarriage of justice." *Pungitore*, 910 F.2d at 1126. The District Court

gave clear instructions to the jury that their recollections controlled. Moreover, in

defense counsel's summation, he also addressed the jury regarding the alleged

misstatements:

> It is your recollection of the evidence that counts. . . . And in this regard I'll just point out that contrary to [the prosecutor's] recitation, my recollection of the limousine ride where the alleged statements of the plan or explanation of the plan to Robert [Sacks'] wife allegedly occurred, contrary to [the prosecutor's] recollection, I don't believe that the word fraud was ever used. And as to another conversation cited as proof against Mr. Hernandez, one supposedly involving a Scott Salomon. . . . Mr. Salomon never mentioned Diego Hernandez in his testimony.

Supp. App. at 211. These clarifications, combined with the fact that the prosecution

presented significant evidence against Hernandez over the course of a four-week trial,

demonstrate that Hernandez was not deprived of a fair trial. For instance, despite the

prosecutor's imprecise statements that Bank of America notified Hernandez and his wife

that their account was closed because of fraud, that inference was otherwise supported by

Sherman's testimony that a Bank of America official told Appellant that "something

didn't smell right" about the account. App. at 76aa3. Thus, overall, there was no

miscarriage of justice in Appellant's case.

## III.

For the foregoing reasons, we will affirm the District Court's judgment.

7